**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

JOSEPH CHRISTIAN THORESEN,

Civil No. 21-2459 (JRT/ECW)

Petitioner,

v.

WARDEN SHERLINDA WHEELER

**MEMORANDUM OPINION AND ORDER**
**ADOPTING THE MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATION**

Respondent.

Joseph Christian Thoresen, OID #255019, MCF-Oak Park Heights, 5329 Osgood Avenue North, Stillwater, MN 55082, *pro se* plaintiff.

Edwin William Stockmeyer, III and Matthew Frank, **MINNESOTA ATTORNEY GENERAL'S OFFICE**, 445 Minnesota Street, Suite 1800, Saint Paul, MN 55101, for defendant.

Plaintiff Joseph Christian Thoresen is currently serving a life sentence without the possibility of release on his conviction in Minnesota state court of first-degree premeditated murder.  After Thoresen's conviction, he appealed the conviction claiming it was an error to admit uncorroborated accomplice testimony and that the state trial court abused its discretion in denying his request for special jury instructions.  The Minnesota Supreme Court upheld his conviction, finding that the accomplice testimony was sufficiently corroborated and that the district court did not abuse its discretion in denying the requested jury instructions.  Thoresen subsequently sought a writ of certiorari from the United States Supreme Court, which was denied.  He then sought forensic testing, which was denied, and filed his first motion for post-conviction relief,

seeking to vacate his conviction. The state court denied the motion as the stated grounds were procedurally barred and failed on the merits. The Minnesota Supreme Court subsequently affirmed the state trial court's findings and determined that most of Thoresen's claims were procedurally barred.

After filing a second unsuccessful petition for postconviction relief, Thoresen filed the current petition for Writ of Habeas Corpus ("petition").  Thoresen argues eight separate grounds for relief.  Magistrate Judge Elizabeth Cowan Wright reviewed Thoresen's petition and issued a Report and Recommendation ("R&R") recommending that the petition be denied on all eight grounds.  Thoresen now objects to the R&R, raising six separate objections.

Because Thoresen's claims for insufficient evidence and DNA testing are state law claims that do not warrant federal habeas relief, the Court will overrule Thoresen's first objection.  Because Thoresen's claims as to flawed witness testimony, judicial error, search warrants, prosecutorial misconduct, ineffective assistance of counsel, and arguments regarding withholding of social media posts are procedurally defaulted, the Court will overrule his second and third objections.  Because the state and appellate courts' conclusion that the withheld interviews were not material and did not violate *Brady* is not contrary to or based on an unreasonable application of federal law, the Court will overrule Thoresen's fourth objection.  And finally, because Thoresen has failed to make the required substantial showing of the denial of a constitutional right, and because

Thoresen's claims are not susceptible to further proceedings, the Court will overrule Thoresen's fifth and sixth objections. The Court will adopt the R&R and will deny the petition with prejudice.

## BACKGROUND

The factual and procedural background of this case have been addressed in prior rulings and the Magistrate Judge's R&R, which are incorporated by reference and briefly summarized to extent relevant to resolve Thoresen's objections to the R&R. (*See* R. & R., Dec. 7, 2022, Docket No. 21); *State v. Thoresen* ("*Thoresen I*"), 921 N.W.2d 547, 549 (Minn. 2019); *Thoresen v. State* ("*Thoresen II*"), 965 N.W.2d 295, 302 (Minn. 2021).

On June 21, 2016, David Haiman was killed and decapitated on a trail in Itasca County. *Thoresen II*, 965 N.W.2d at 302. Following a police investigation, a grand jury indicted Thoresen on four offenses, and each count encompassed one theory of principal liability as well as one theory of accomplice liability. *Id.* A jury found Thoresen guilty of first-degree premeditated murder as a principal and as an aider and abettor. *Id.* The district court entered a conviction on principal liability and sentenced Thoresen to life in prison. *Id.*

Thoresen appealed his conviction to the Minnesota Supreme Court, arguing that the testimony of his accomplice, Kayleene Greniger, was not sufficiently corroborated to support his first-degree premeditated murder conviction and further, that the trial court abused its discretion by denying his request to instruct the jury about the credibility of

drug users or witnesses who could later be charged as accessories after the fact. *Thoresen I*, 921 N.W.2d at 551–53. The Court rejected the first argument, determining that Greniger's testimony was sufficiently corroborated by four witnesses and independent evidence of his guilt. *Id.* at 552. The Court also rejected the second argument, concluding that the trial court did not abuse its discretion. The jury heard that the witnesses used mind-altering substances that affected their memory and perception and the court had instructed the jury to consider each witness's ability to remember and relate to facts and whether they had an interest in the outcome of the case. *Id.* at 554.

In November 2019, Thoresen filed a motion in state court for additional blood and DNA testing because he claimed that investigators did not test 94 percent of the evidence collected from his apartment. *Thoresen II*, 965 N.W.2d at 302. The state court denied the motion because the test was available at the time of Thoresen's jury trial, but he failed to raise the issue before trial or during his first appeal. *Id.* Further, the state court determined that additional testing of apartment evidence would not establish his innocence because Haiman was not killed in Thoresen's apartment. *Id.*

Thoresen then timely moved for postconviction relief, seeking to vacate his conviction on several grounds: (1) the State withheld exculpatory evidence, including three witness interviews and social media posts, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963); (2) the grand jury indictment was insufficient and overly confusing; (3) the trial court committed plain error by failing to stop the prosecutor from alleged

misstatements during closing argument; (4) judicial estoppel; (5) prosecutorial misconduct; (6) ineffective assistance of trial and appellate counsel; (7) insufficient evidence; (8) deficient search warrants; and (9) *Miranda* violations. *Id.* at 303. The state trial court denied Thoresen's petition for postconviction relief without an evidentiary hearing and Thoresen appealed to the Minnesota Supreme Court. *Id.* at 303.

The Minnesota Supreme Court affirmed the state trial court's denial of the first postconviction petition. The court held that the three witness interviews were not material for *Brady* purposes and that the claim concerning social media posts was procedurally barred as not raised on direct appeal despite knowledge of them at the time. *Id.* at 304–07. The Minnesota Supreme Court further held that Thoresen's claims that challenged the indictment and search warrant, alleged plain error in allowing improper closing comments, judicial estoppel and prosecutorial misconduct, ineffective assistance of counsel, and *Miranda* violations were all procedurally barred. *Id.* at 307–12. Lastly, the Minnesota Supreme Court held that Thoresen was not entitled to postconviction forensic DNA testing to demonstrate actual innocence because he did not meet the requirements under Minn. Stat. § 590.01, subd. 1a(a). *Id.* at 311.

In March 2021, Thoresen brought his second petition for postconviction relief, arguing a number of ineffective assistance of appellate counsel claims. (R. & R. at 14.) The state trial court denied his claims on both procedural grounds and on the merits. (*Id.* at 15.) Thoresen did not appeal this order. (*Id.*)

5

Thoresen then filed his petition for Writ of Habeas Corpus with this Court on November 5, 2021, pursuant to 28 U.S.C. § 2254.  (Pet. Writ Habeas Corpus ("Pet."), Nov. 5, 2021, Docket No. 1.)  As part of the present petition, Thoresen asserts eight grounds for relief: (1) insufficient evidence because the non-corroborated testimony was from his accomplice and another accessory; (2) flawed testimony from a witness who claimed to burn evidence in the investigation to avoid implication; (3) judicial error when the prosecutor first gained an indictment that was chaotic and confusing and second gained a conviction through perjured testimony; (4) *Brady* violation for withheld social media posts/emails and police interviews that contradict prosecution's theory of events; (5) DNA testing was faulty when the prosecution presented only presumptively tested items; (6) faulty search warrants that had two different addresses on them, neither of which were Thoresen's; (7) prosecutorial misconduct when prosecutor withheld exculpatory evidence and consistently abused power in misrepresenting facts and allowing biased jurors; and (8) ineffective assistance of counsel.  (*See generally Id.*)

The Magistrate Judge reviewed Thoresen's petition and issued an R&R  (R. & R.) recommending that Thoresen's petition be denied in its entirety.  (*Id.* at 40.)  Thoresen filed objections to the R&R, raising six objections in total.  (Objs. R. & R. at 1, Dec. 28, 2022, Docket No. 24.)

## DISCUSSION

### I.    STANDARD OF REVIEW

6

After a magistrate judge files an R&R, a party may file "specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. LR 72.2(b)(1). "The objections should specify the portions of the magistrate judge's report and recommendation to which objections are made and provide a basis for those objections." *Mayer v. Walvatne*, No. 07–1958, 2008 WL 4527774, at *2 (D. Minn. Sept. 28, 2008). For dispositive motions, the Court reviews de novo[1] a "properly objected to" portion of an R&R. Fed. R. Civ. P. 72(b)(3); *accord* D. Minn. LR 72.2(b)(3). "Objections which are not specific but merely repeat arguments presented to and considered by a magistrate judge are not entitled to de novo review, but rather are reviewed for clear error." *Montgomery v. Compass Airlines, LLC*, 98 F. Supp. 3d 1012, 1017 (D. Minn. 2015).

A document filed by a pro se litigant is to be liberally construed and must be held to a less stringent standard than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, pro se litigants are not excused from failing to comply with substantive or procedural law. *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984).

---

[1] De novo means that this Court will review the evidence and the law independently. In other words, the Magistrate Judge's prior opinion has no influence on how the Court reviews the issues. The Court will review the case from the start, as if it is the first court to review and weigh in on the issues.

## II.    ANALYSIS

While Thoresen lists six objections on the initial page of his objection motion, his analysis groups some of those objections together.  Still, the Court will construe the motion as having raised six specific objections and will take each in turn where possible.

### A.  Objection One: Claims Involving State Law

A federal court's review of habeas corpus petitions filed by state prisoners is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Habeas relief under § 2254 is warranted in three circumstances: (1) when a state court decision was contrary to clearly established federal law, (2) when a state court decision involved an unreasonable application of clearly established federal law, or (3) when a state court decision "was based on an unreasonable determination of the facts in light of the evidence presented."  28 U.S.C §§ 2254(d)(1), (2).  Section 2254(a) allows federal courts to entertain habeas petitions for persons "in custody pursuant to the judgment of a state court only on the ground that [the person] is in custody in violation of the Constitution or law or treaties of the United States."  As such, the Supreme Court has "stated many times that federal habeas corpus relief does not lie for errors of state law."  *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (internal citation and quotation omitted).

In Thoresen's petition, he argues that there was insufficient corroborated evidence to support his conviction and that additional testing should have been allowed because

the prosecution during trial only presented presumptive tested evidence.  The Magistrate Judge found that these claims concern state law and thus do not warrant federal habeas relief.  The Court agrees.  As the Eighth Circuit has explained, "corroboration requirement is a matter of state law which does not implicate a constitutional right cognizable on habeas review."  *Loeblein v. Dormire*, 229 F.3d 724, 727 (8th Cir. 2000) (quoting *Redding v. Minnesota,* 881 F.2d 575, 578 (8th Cir. 1989), *cert. denied,* 493 U.S. 1089 (1990).  Additionally, to the extent Thoresen is arguing that the trial court erred in denying his post-conviction request for additional DNA testing, such a request is governed by state law.  *See* Minn. Stat. § 590.01, subd. 1a.  As corroboration and DNA testing are not federal issues, they are not grounds for habeas review. Thus, the Court will overrule Thoresen's first objection and adopt the Magistrate Judge's recommendation to dismiss the petition as to this claim.

### B.  Objections Two and Three: Exhaustion, Procedural Default, Judicial Estoppel, and Judicial Error

Thoresen's second and third objections challenge the Magistrate Judge's overall conclusion that Thoresen's procedural default of grounds two, three, part of four, and six through eight should be dismissed because the Court cannot adjudicate them on the merits.  These grounds for relief include: (2) flawed testimony by a witness who claimed to burn evidence in the investigation to avoid implication; (3) judicial error when the court allowed the prosecutor to gain a chaotic and confusing indictment and ultimately a

conviction through perjured testimony; (4) *Brady* violation for withheld social media posts; (6) faulty search warrants that had two different addresses on them, neither of which were Thoresen's; (7) prosecutorial misconduct when the prosecutor withheld exculpatory evidence and consistently abused power in misrepresenting facts and allowing biased jurors; and (8) ineffective assistance of counsel. (*See generally* Pet.)

The AEDPA allows a federal court to grant an application for writ of habeas corpus only once the applicant has exhausted all remedies available in state court. 28 U.S.C. § 2254(b)(1)(A). The exhaustion doctrine requires that the State be given the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal quotation and citation omitted). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id.* (quoting *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995) (*per curiam*). "The onus rests on the prisoner to present the substance of his federal claims in each appropriate state court [.]" *Turnage v. Fabian*, 606 F.3d 933, 936 (8th Cir. 2010) (internal quotation and citation omitted).

The Supreme Court has made clear that a federal court may not review federal claims that were procedurally defaulted in state court. *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017). A constitutional claim is procedurally defaulted if the state courts will not

review based on an adequate and independent state procedural rule. *Coleman v. Thompson,* 501 U.S. 722, 750 (1991).

Under Minnesota law, the *Knaffla* rule provides that "where direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief." *State v. Knaffla,* 243 N.W.2d 737, 741 (1976). In other words, claims known but not raised in the direct appeal are procedurally barred. *See Hooper v. State*, 838 N.W.2d 775, 787 (Minn. 2013) ("The *Knaffla* rule provides that when a petition for postconviction relief follows a direct appeal of a conviction, all claims raised in the direct appeal and all claims of which the defendant knew or should have known at the time of the direct appeal are procedurally barred.") Moreover, claims that were not available at the time of appeal, such as effective assistance of appellate counsel, are procedurally barred unless they are raised in the first post-conviction proceeding. *See Townsend v. State*, 723 N.W.2d 14, 19 (Minn. 2006). Because the *Knaffla* rule constitutes "an adequate and independent state procedural rule," claims that Minnesota courts denied under *Knaffla* cannot be reviewed by federal courts.[2] *Davis*, 137 S. Ct. at 2064.

---

[2] There are two exceptions to the *Knaffla* rule: if a claim's novelty was so great that its legal basis was not reasonably available when the direct appeal was taken, or if fairness so requires the review and the petitioner did not deliberately and inexcusably fail to raise the issue on direct appeal. *See Townsend v. State,* 723 N.W.2d 14, 18 (Minn. 2006) (citations omitted). However, neither of these two exceptions apply here.

This bar to federal habeas review may be overcome if the petitioner can establish "'cause' to excuse the procedural default" and demonstrate that they have "suffered actual prejudice from the alleged error." *Id.* at 2062. A petitioner satisfies the cause and prejudice requirements if they can demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 748. "'[C]ause' under the cause and prejudice test must be something *external* to the petitioner, something that cannot fairly be attributed" to them, such as "a showing that the factual or legal basis for a claim was not reasonably available to counsel or that some interference by officials made compliance impracticable." *Coleman*, 501 U.S. at 753 (internal quotation and citations omitted) (emphasis in original) (cleaned up). To demonstrate prejudice, a petitioner must show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady,* 456 U.S. 152, 170 (1982) (emphasis in original). The fundamental-miscarriage-of-justice exception to the procedural default doctrine is available only upon a "showing, based on new evidence, that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Brownlow v. Groose*, 66 F.3d 997, 999 (8th Cir. 1995) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Here, the Magistrate Judge found that it was obliged to respect the conclusion of the Minnesota Supreme Court that Thoresen's grounds two, three, part of four (social

media posts), six, seven, and eight were barred from consideration by *Knaffla*. (R. & R. at 25.) The Magistrate Judge concluded that because Thoresen had not satisfied the cause requirement and no exceptions applied, it was unnecessary to consider the prejudice prong. (*Id.* 25–28.)

Thoresen objects to the Magistrate Judge's conclusions, again arguing that the *Knaffla* bar is unconstitutional and asserting that the withheld evidence of the social media posts, had they been provided, "would be exculpatory evidence and would have completely undermined the Prosecutions Star witness' [sic]." (Objs. R. & R. at 2.) Additionally, Thoresen takes issue with the Minnesota Supreme Court's *Knaffla* bar on his judicial estoppel and judicial error claims, essentially rehashing why his claims have merit and arguing that the prosecutor's use of known perjured and inconsistent testimony shows malice and prejudice toward Thoresen and violate his right to a fair and impartial trial. (*Id.* at 3–5.)

Thoresen's grounds for relief based on flawed witness testimony, judicial error and judicial estoppel, *Brady* violation as it relates to the social media posts, flawed search warrants, prosecutorial misconduct, and ineffective assistance of counsel were all considered by the state trial court in his initial postconviction petition and considered by the Minnesota Supreme Court on appeal. Both courts found that Thoresen was not entitled to relief on any of these grounds because they were barred by *Knaffla* and failed on their merits. The record showed that Thoresen "knew that the State had the Facebook

13

posts before both the jury trial and his direct appeal" because they were seized pursuant to a search warrant. *Thoresen II*, 965 N.W.2d at 307. Moreover, "Thoresen knew enough about the posts to unsuccessfully challenge the seizure of the posts" before the trial. *Id.* Therefore, Thoresen's failure to assert the State's lack of disclosure of the posts that **Thoresen knew existed** in his direct appeal was fatal to his claim under the *Knaffla* rule. Because *Knaffla* is an independent and adequate state procedural rule, further litigation of the claim in this Court is precluded. *See Coleman,* 501 U.S. at 750.

The same is true for Thoresen's arguments about the indictment, witness testimony, search warrants, prosecutorial misconduct, judicial error in allowing the prosecutor to make alleged misstatements, and ineffective assistance of trial counsel. Thoresen knew before his direct appeal what was included in the indictment, had access to the grand jury transcript before his jury trial to be aware of the factual basis for his prosecutorial misconduct claim, was present at the jury trial and heard the presentation of evidence, and knew of the alleged trial errors committed by his counsel. *See generally Thoresen II*, 965 N.W.2d at 307–10. Moreover, Thoresen made some of these arguments to the district court before his trial or on appeal, and the courts properly considered the merits of the claims.[3] Because Thoresen's claims are procedurally defaulted, habeas review is unavailable unless Thoresen can demonstrate cause and prejudice or

---

[3] For example, on Thoresen's argument that the prosecutor knowingly presented perjured testimony, the Minnesota Supreme Court found that Thoresen presented no evidence to support his claim, and his conclusory allegations that a change in story or inconsistencies prove up the claim were insufficient as a matter of law. *Thoresen II*, 965 N.W.2d at 309, n.3.

demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Thoresen has not shown cause here.  Thoresen points to no evidence explaining his failure to assert these claims in his direct appeal despite having knowledge of them before, during, and/or immediately after his trial.  He has not shown that this failure was due to "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule."  *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The basis for this claim was available to counsel, and "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for procedural default." *Id.* at 486.  In other words, Thoresen's objection that the application of *Knaffla* is 'cause' is misguided because the application of *Knaffla* was directly due to his failure to assert the claims in the first instance. Thoresen has therefore failed to satisfy the cause requirement because he has not identified any external cause for the delay.  Accordingly, the Court need not consider whether he has shown prejudice.  *See Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011) ("Because Murphy has not established cause for the default, the question of prejudice need not be reached.").

Further, Thoresen has not shown that a failure to consider the claim would result in a fundamental miscarriage of justice. To fall within the fundamental-miscarriage-of-justice exception, "a habeas petitioner [must] present new evidence that affirmatively

demonstrates that he is innocent of the crime for which he was convicted." *Abdi v. Hatch,* 450 F.3d 334, 338 (8th Cir. 2006). Thoresen has failed to provide any new evidence demonstrating his actual innocence. While Thoresen relies on the withheld interviews and the withheld social media posts as new evidence, these fall well short of demonstrating Thoresen's actual innocence. As an initial matter, the social media posts are not new evidence because Thoresen knew of the existence of the posts before his jury trial. *See Thoresen II*, 965 N.W.2d at 307. As for the withheld interviews, the Minnesota Supreme Court held that the interviews were not material. Even if they are to be considered new evidence, they are not material because, as discussed more fully below, they would not have led to a different verdict. No other evidence has been presented which would undermine this conclusion.

In sum, the state trial court and Minnesota Supreme Court did not err in concluding that Thoresen's grounds two, three, part of four, and six through eight were procedurally defaulted under *Knaffla* and without merit. Because Thoresen failed to demonstrate cause or fundamental miscarriage of justice, the Court is barred from considering these claims. Accordingly, the Court will overrule Thoresen's second and third objections on these points and adopt the Magistrate Judge's recommendation.

### C.        Objection Four: Due Process *Brady* Violation (Interviews)

Thoresen alleges that the state committed a *Brady* violation of his due process rights because it withheld at least three interviews from potential witnesses that

contradicted Greniger's and the prosecution's theory of events. (Pet. at 10.) He asserts that these interviews were favorable to him and would allow the jury to make an informed and fair decision. (Traverse at 7, Jan. 28, 2022, Docket No. 18.) Thoresen raised this argument in his state court petition for postconviction relief, but the court ultimately held that the three interviews were either not favorable or not material. *See Thoresen II*, 965 N.W.2d at 304–06. The Minnesota Supreme Court affirmed, holding that while the withheld interviews may have met the suppression and/or favorable prongs of the *Brady* violation test, they did not meet the materiality prong. *Id.* The Court explained that there was no reasonable probability that the outcome of the jury trial would have been different because substantial evidence supported the jury's conclusion that Thoresen killed Haiman. *Id.*

The Magistrate Judge found that the Minnesota Supreme Court's application of *Brady* was neither contrary to, nor an unreasonable application of, clearly established federal law and was not based on an unreasonable determination of the facts in light of the evidence presented. (R. & R. at 34–39.) The Magistrate Judge determined that the Minnesota Supreme Court used the correct United States Supreme Court precedent to resolve Thoresen's claim by applying *Brady*, and further analyzed the materiality and importance of the undisclosed information as *Brady* requires. (*Id.*) The Magistrate Judge concluded that the suppressed evidence would not have changed the trial outcome had it been disclosed. (*Id.* at 38–39.)

17

Thoresen objects to the Magistrate Judge's findings.  He asserts that the interviews are material and shed light on the state's claims and witness testimony that was conflicting.  (Objs. R. & R. at 5–6.)  Further, Thoresen argues that the Magistrate Judge "unreasonably disregaurded [sic] the impeachment value of certain evidence that would discredit the prosecution's key eyewitnesses" and failed "to consider that the withheld evidence would have enabled defense counsel to raise the defense of another's involvement . . . which was otherwise unavailable to the defense."  (*Id.* at 6.)

AEDPA sets forth a highly deferential standard when reviewing state court decisions.  *Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004) (requiring the state court's decision to be "objectively unreasonable" for § 2254 relief).  In order to be granted relief under 28 U.S.C. § 2254, the petitioner must show the adjudication of their claim either (1) resulted in a decision contrary to, or involving an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state court.  28 U.S.C. § 2254(d).  The federal court must presume the state court's factual determinations are correct unless the petitioner presents clear and convincing evidence to the contrary.  28 U.S.C. § 2254(e); *Perry v. Kemna*, 356 F.3d 880, 883 (8th Cir. 2004).

Under *Brady*, a prosecutor may not withhold evidence that is favorable to a criminal defendant, whether that evidence is exculpatory or impeachment evidence.  *Brady*, 373 U.S. at 87.  Regardless of the prosecutor's intent, failure to produce favorable

18

evidence violates due process where the evidence is material.  *Id.*  To prevail on this claim, Thoresen must demonstrate that: (1) the prosecution suppressed evidence; (2) the evidence was favorable to him as either exculpatory or impeaching; and (3) the evidence was material in that prejudice ensued.  *United States v. Haskell,* 468 F.3d 1064, 1075 (8th Cir. 2006).

Given that the state courts assumed the prosecution suppressed the evidence and held that none of the interviews were material, the Court focuses on the third prong of the *Brady* test, which is whether they were material such that Thoresen suffered prejudice as a result of the State's failure to disclose the interviews.   Prejudice under *Brady* requires "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *Kyles v. Whitley,* 514 U.S. 419, 433–34 (1995) (quotation omitted).  A reasonable probability that the result of the proceeding would have been different "does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal," but is satisfied when the suppression "undermines confidence in the outcome of the trial."  *Id.* at 434 (quotation omitted).

Thoresen does not specify which subsection of § 2254(d) entitles him to relief, but the Court concludes that neither provision does.  First, the Minnesota Supreme Court's decision was not "contrary to" clearly established federal law under § 2254(d)(1).  The Minnesota Supreme Court correctly identified and applied *Brady* as the clearly

established law governing Thoresen's claims that the prosecution failed to disclose exculpatory evidence. *See Collier v. Norris*, 485 F.3d 415, 422 (8th Cir. 2007). Therefore, habeas relief is not warranted under this provision.

Second, the Court finds that the Minnesota Supreme Court's decision was not based on an "unreasonable determination of facts" in light of the evidence available in the state court proceeding. The evidence in the state court record sufficiently supports the Minnesota Supreme Court's determination that Thoresen failed to show *Brady* prejudice under the materiality prong. The suppression of the interviews did not create a reasonable probability that the result of the proceeding would have been different.

In the first interview, R.D., father of a prosecution witness who owned the land where some of the events in question occurred, told police that he did not have a basket on the back of his four-wheeler, that he had two little slugger baseball bats in the garage, one white and one black, and that he did not believe either bat was missing. *Thoresen II*, 965 N.W.2d at 304–05. Thoresen claims that these statements contradicted his accomplice Greniger's trial testimony, in which she stated that Thoresen told her they were going to kill Haiman while on the four-wheeler, and that she observed a wooden baseball bat on the back of the bike and later in the car next to the murder weapon. *Id.* at 305; (Traverse at 7–8.) But as the Minnesota Supreme Court correctly held, even if the R.D. interview was withheld and favorable as impeachment evidence, it simply goes to

the **origin** of the bat.  It does not outweigh extensive trial evidence that Thoresen used a bat to hit Haiman in the head.  *Thoresen II*, 965 N.W.2d at 305.

In the second interview, J.P. stated that Thoresen's friend, T.C., was "trying to fight all this stuff in court ah about what he didn't do and what he did do and that he had a bat, that was his bat," further adding "I guess somebody hit the guy in the head or something or? [sic]."  *Id.*  Thoresen argues that the statements implicate T.C. in the murder and show that the bat neither was in his hands nor came from the R.D. residence.  (Traverse at 9.)  But J.P.'s statement does not plainly implicate T.C. in the murder because he did not identify who hit "the guy" in the head and, even if T.C. owned the bat, it does not suggest that T.C. used it to kill Haiman.  In fact, as the state courts correctly observed, this statement was vague and speculative, and nothing in the statement would support any implication that the bat was never in Thoresen's hands.  *Thoresen II*, 965 N.W.2d at 305.

In the last interview, Thoresen's neighbor, D.S., stated that she was sitting in her car on the day of the murder and witnessed two young men get into a blue car that were neither Greniger nor Thoresen.  *Id.* at 306.  Thoresen asserts that this interview contradicts testimony of Greniger's brother, who had testified that he saw Thoresen throw Haiman up against the wall and later saw him tied to a chair and lying on the floor of Thoresen's bedroom.  *Thoresen I*, 921 N.W.2d at 552.  Even if this evidence could have been used to impeach Greniger's brother, the Minnesota Supreme Court again correctly held that this statement would not have changed the result.  Such impeachment would

not negate the substantial evidence that Thoresen killed Haiman, and Greniger's brother was only present for the events prior to the murder—not the murder itself. *Thoresen II*, 965 N.W.2d at 306. Moreover, that testimony was corroborated by DNA evidence, Greniger's accounting of the hours before the murder, and other testimony that Haiman was injured in Thoresen's apartment. *Id.*

Thus, the evidence in the state court record supports the state trial court and the Minnesota Supreme Court's reasonable determination that Thoresen failed to establish that suppression of the exculpatory or impeachment evidence "undermine[d] confidence in the outcome of the trial." *Collier*, 485 F.3d at 424 (internal quotation and citation omitted). Because Thoresen has failed to demonstrate that the adjudication of his *Brady* claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," habeas relief is not warranted under § 2254(d)(2).

Third, the state courts reasonably applied *Brady* to the interviews under § 2254(d)(1). Given that the interview evidence did not outweigh evidence that Thoresen both had a bat and hit Haiman with it, did not implicate another primary suspect that would negate Thoresen's involvement, and did not negate other substantial evidence, the Minnesota Supreme Court reasonably concluded that the disclosure of the interviews would not produce a different result. Considering the record presented to the jury as a whole, it was objectively reasonable for the state court to conclude from its *Brady*

22

application that the disclosure of the interviews "would not put the whole case in such a different light as to undermine confidence in the verdict." *Collier*, 485 F.3d at 424 (quotation omitted). Thus, habeas relief is not warranted under the "unreasonable application of[ ] clearly established Federal law" provision of § 2254(d)(1).

In sum, given the breadth of evidence available at trial regarding Thoresen's guilt, Thoreson has failed to show that the Minnesota Supreme Court unreasonably applied *Brady* to its analysis of the interviews. Therefore, the Court will overrule Thoresen's fourth objection on this ground for habeas relief and adopt the Magistrate Judge's recommendation of dismissal.

### D. Objections Five and Six: Certificate of Appealability and Dismissal

Thoresen's last two objections concern the Magistrate Judge's recommendation that a Certificate of Appealability be denied and that Thoresen's habeas petition be dismissed with prejudice. However, Thoresen only lists these objections, but does not provide any specific analysis.

The Court may grant a certificate of appealability only where a petitioner has "made a substantial showing of the denial of any federal constitutional right." *Copeland v. Washington*, 232 F.3d 969, 977 (8th Cir. 2000); *see also* 28 U.S.C § 2253(c)(2). The petitioner must show that "the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Flieger v. Delo*, 16 F.3d 878, 883 (8th Cir. 1994); *see also Slack v. McDaniel*, 529 U.S. 473, 483–84

(2000). Despite Thoresen's assertions, the Court finds it unlikely that another court would decide the issues raised in Thoresen's motion differently and the issues are not debatable or deserving of further proceedings. The Court therefore concludes that Thoresen has failed to make the required substantial showing of the denial of a constitutional right and will deny a Certificate of Appealability.

Additionally, the issues raised in Thoresen's petition have been thoroughly developed and considered by state courts multiple times, and now by the Magistrate Judge and this Court. The issues are not amenable to further debate or proceedings. Thus, the Court will deny the habeas petition with prejudice.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, the Court **OVERRULES** Plaintiff's Objections to the Report and Recommendation [Docket No. 24], and **ADOPTS** the Report and Recommendation of the Magistrate Judge [Docket No. 21]. **IT IS HEREBY ORDERED** that:

1.  Petitioner's Objections to Report & Recommendation [Docket No. 24] are **OVERRULED**;

2.  The Magistrate Judge's Report and Recommendation [Docket No. 21] is **ADOPTED**;

3.  Petitioner's Petition for Writ of Habeas Corpus [Docket No. 1] is **DENIED**;

4.  Petitioner's action is **DISMISSED with prejudice;** and

5.  The Court does **NOT** certify for appeal under 28 U.S.C. § 2253(c) the issues

raised in Thoresen's Petition for Writ of Habeas Corpus.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


DATED: August 2, 2023                                 _____s/John R. Tunheim_____
at Minneapolis, Minnesota.                               JOHN R. TUNHEIM
                                                        United States District Judge